UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY D. SIPLE,

           Plaintiff,                Case No. 2:17-CV-13477
                                     District Judge Gershwin A. Drain
v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

           Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 10), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 13) and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 13),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Kimberly D. Siple, brings this action under 42 U.S.C. §§ 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 10), the Commissioner's cross-motion for summary judgment (DE 13), and the administrative record (DE 7).

### A.    Background and Administrative History

Plaintiff alleges her disability began on February 21, 2014, at the age of 43. (R. at 179, 200.)  In her disability report, she lists several conditions (persistent depressive disorder (dysthymia); generalized anxiety disorder; major depression, recurrent, in remission; chronic osteoarthritis; diabetes mellitus; obstructive sleep apnea; shoulder and neck pain; and, flat feet heel pain) that limit her ability to work.  (R. at 199.)  Her application was denied on April 13, 2015.  (R. at 108-18.)

On June 3, 2016, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 123-24.)  On August 10, 2016, ALJ John J. Rabaut held a hearing, at which Plaintiff and a vocational expert (VE), Harry Cynowa, testified. (R. at 68-107.)  ALJ Rabaut issued an opinion on September 14, 2016, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 48-67.)

On October 25, 2016, Plaintiff submitted a request for review of ALJ Rabaut's decision/order.  (R. at 174-76.)  However, on August 29, 2017, the Appeals Council denied Plaintiff's request for review.  (R. at 1-7.)  Thus, ALJ Rabaut's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on October 25, 2017.  (DE 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 200 pages of medical records that were available to ALJ Rabaut at the time of his September 14, 2016 decision.  (R. at 290-491 [Exhibits 1F – 14F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 21, 2014, her alleged onset date.  (R. at 53.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: attention deficit hyperactivity disorder (ADHD), fibromyalgia, carpal tunnel syndrome (CTS), diabetes, obesity and dysthymia.  (*Id*.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 54-57.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC to:

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

perform sedentary work as defined in 20 CFR 404.1567(a) except that she requires the option to alternate between sitting and standing about every 15 to 30 minutes.  Claimant cannot climb ladders, ropes or scaffolds.  Claimant can occasionally perform each of the following postural activities: climbing ramps or stairs, balancing, stooping, kneeling, crouching and crawling.  Claimant is restricted to frequent fingering.  She must avoid concentrated exposure to excessive vibration and all exposure to unprotected heights.  Claimant is restricted to work involving no more than occasional decision making and occasional changes in the work place.

(*Id.* at 57-61.)  At **Step 4**, the ALJ determined that Plaintiff is unable to perform any past relevant work.  (*Id*. at 61.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id*. at 62-63.)  The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 21, 2014 through the date of the decision.  (*Id*. at 63.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

4

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.  Analysis

Plaintiff identifies three claims of error: (1) whether substantial evidence supports the ALJ's evaluation of the April 2016 mental functioning assessment completed by Dr. Arielle Stone; (2) whether the ALJ properly evaluated Plaintiff's RFC as required by SSR 96-8p and SSR 85-15; ; and, (3) whether Plaintiff could perform light work.  (DE 10 at 5, 11-16.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision. (DE 13 at 6-17.)  I will address each argument in turn.

> **1.     Substantial evidence supports the ALJ's evaluation of the April 2016 mental functioning assessment signed by therapist Mary Kay Meier, MA, LLP and psychiatrist Arielle Stone, MD**

Plaintiff argues that the ALJ erred in evaluating the April 29, 2016 medical source statement of psychiatrist Arielle Stone, M.D. (which was also signed by therapist Mary Kay Meier, MA, LLP).  (DE 10 at 11-13.)  The statement consists primarily of a checklist assessment that indicated that Plaintiff was "moderately limited" in her ability to: "understand and remember detailed instructions;" "carry out short and simple instructions;" "maintain attention and concentration for extended periods;" "work in coordination with or proximity to others without being

6

unduly distracted by them;" "make simple work-related decisions;" "ask simple questions or request assistance;" "accept instructions and to respond appropriately to criticism from supervisors;" "respond appropriately to changes in the work setting;" and, "set realistic goals or to make plans independently of others;" and that she was "markedly limited" in her ability to: "carry out detailed instructions;" "perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;" "sustain an ordinary routine without special supervision;" and, "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. at 427-30.) The statement opined that these limitations have existed since "at least: July 2009," and were based "on *patient's report*, past medical records and documents *provided by the patient* including employer's memos, physicians statements, & FMLA documents – all related to past employer." (*Id.* at 430 (emphases added).) ALJ Rabaut reviewed this "form assessment of claimant's mental functioning" and gave the opinions "great weight insofar as they are consistent with findings of mild problems interacting and relating to others and moderate difficulties with work related decision making and adapting to change." (R. at 60, citing R. at 427-32.)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 404.1527(b). The regulations define

7

medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). For claims filed before March 27, 2017, "the Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Martin v. Colvin*, 207 F.Supp.3d 782, 788 (S.D. Ohio 2016) (quoting *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013)). "In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers." *Id.*

Under the regulations, a treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. To qualify as a treating source, the

physician must have an "ongoing treatment relationship" with the claimant.  20

C.F.R. § 404.1502.

Plaintiff asserts, without citing any supporting evidence aside from the

medical source statement, that Dr. Stone is her "treating psychiatrist."  (DE 10 at

12.)  The Commissioner, on the other hand, states that Dr. Stone was not a treating

source, and that the ALJ properly evaluated Dr. Stone's opinion as a medical, but

not treating, source opinion.  (DE 13 at 14.)  Plaintiff did not avail herself of the

opportunity to file a reply on this or any other issue.  The Commissioner's

argument is compelling.  As the Commissioner explains, the record only notes that

Dr. Stone had an "encounter" with Plaintiff *one time* before completing the April

2016 checklist assessment form, and it is not clear that Dr. Stone even performed

an examination of Plaintiff at that "encounter" because no clinical notes were

provided.  (*Id.*, citing R. at 477.)  The record similarly contains no treatment notes

from Ms. Meier.  (*Id.*)  It is well established that a single visit does not suffice to

establish a treating physician relationship.  *See Kornecky v. Comm'r of Soc. Sec.*,

167 F. App'x 496, 506-07 (6th Cir. 2006).  Plaintiff has failed to provide any

record evidence establishing that she had a treating relationship with Dr. Stone,

and has therefore failed to carry her burden of presenting evidence that Dr. Stone

was a treating physician.  *See Landsaw v. Sec'y of Health & Human Servs.*, 803

F.2d 211, 214 (6th Cir. 1986); *Sedore v. Colvin*, No. 1:13CV849, 2014 WL

9

4080265, at *5 (W.D. Mich. Aug. 13, 2014) ("Plaintiff failed to submit medical evidence sufficient to establish that Johnson was a treating physician" and thus "the ALJ was not 'under any special obligation to defer to [his] opinion[s] or to explain why he elected not to defer to [them].'").  Therefore, the ALJ did not commit reversible error by not affording Dr. Stone treating physician status, and the good faith basis for Plaintiff's argument that he should have here is highly questionable.

Nonetheless, the ALJ carefully considered Dr. Stone's form assessment in accordance with the requirements of 20 C.F.R. § 404.1527 and afforded the opinions "great weight insofar as they are consistent with findings of mild problems interacting and relating with others and moderate difficulties with work related decision making and adapting to change."  (R. at 57, 60.)  The ALJ considered Plaintiff's treatment records in evidence (including the requests to her former employer for an adjusted work schedule) and the opinions of treating and non-treating specialists, noting that the treating professionals have "quite consistently opined that claimant's GAF score has been in the 60-65 range" and that "a score from 61 to 70 is reflective of some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning … [and an individual] generally functioning pretty well and [who] has some meaningful interpersonal relationships."  (R. at 61; *see also id*. at 58-60

10

(discussing Plaintiff's treatment records and GAF scores from February 2012 through October 2015).)  ALJ Rabaut gave these GAF scores great weight.  (*Id.* at 61.)[2]

Dr. Stone's "check-box" opinion, on the other hand, fails to specifically refer to any objective findings in support, and is not accompanied by any clinical notes.  (*See* R. at 427-30.)  The Sixth Circuit has recognized that a check-box opinion, unaccompanied by any explanation, is "'weak evidence at best.'"

---

[2] As previously explained by this Court:

> The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed.1994) at 30. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* at 32.

*Edwards v. Barnhart*, 383 F.Supp.2d 920, 924 n.1 (E.D. Mich. 2005).  A GAF score of 51 to 60 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)," and a GAF score of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV, 4th Ed., p. 32.)  However, "the most recent version of the DSM does not include a GAF rating for assessment of mental disorders." *Bryce v. Comm'r of Soc. Sec.*, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014).

*Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citation omitted); *see also Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-14404, 2017 WL 4699721, at *7 (E.D. Mich. Oct. 19 2017) (finding a medical source statement that was in the "check-box format" was "an impotent addition to the record with little to no persuasive value").  In addition, the ALJ properly noted that Dr. Stone's opinion was admittedly based in part on Plaintiff's own statements about her abilities.  (R. at 60; *see* R. at 430.)  *See Teverbaugh v. Comm'r of Soc. Sec.*, 258 F.Supp.2d 702, 705 (E.D. Mich. 2003) (finding a medical report's dearth of objective findings to signify reliance on "subjective complaints related by the claimant").  A physician's opinion based mostly on the claimant's subjective complaints is not entitled to any special deference.  *See Scott v. Comm'r of Soc. Sec.*, No. 18-10261, 2018 WL 6175375, at *4 (E.D. Mich. Nov. 5, 2018) ("[I]t was both reasonable and proper for the ALJ to discount Dr. Miller's opinion as being based primarily upon Scott's subjective complaints."), *report and recommendation adopted*, 2018 WL 6171602 (E.D. Mich. Nov. 26, 2018); *see also Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule.").  ALJ Rabaut found that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record," and Plaintiff has not challenged this credibility finding.  Moreover, ALJ Rabaut also noted that Plaintiff has "consistently admitted to noncompliance with professional advice to diet, exercise, get up out of bed, take her medications as prescribed, reduce her time hunched over the computer and regularly attend both physical therapy and psychotherapy." (R. at 61; *see also id.* at 58-59, citing R. at 291-300, 339-59, 375-83.)  And despite all of these deficiencies in both Plaintiff's contentions and the alleged "treating psychiatrist's" opinion, the ALJ nevertheless accounted for Plaintiff's mental health by limiting her to "restricted work having no more than occasional decision making and occasional changes in the work place" in her RFC.  (R. at 57-61.)

Accordingly, ALJ Rabaut properly evaluated Dr. Stone's form assessment and his decision is supported by substantial evidence.

## 2. The ALJ's RFC's determination is supported by substantial evidence

Plaintiff claims that the ALJ failed to properly assess her mental limitations in making his RFC determination.  Specifically, she contends that the ALJ failed to provide evidentiary sources for the mental limitations in his RFC determination, and that he did not discuss either Plaintiff's ability to understand, carry out or remember instructions or her ability to use judgment in making work-related decisions.  She further argues that the record demonstrates that her ability to concentrate and focus is severely impaired.  (DE 10 at 13-14.)  The Commissioner

13

responds that none of Plaintiff's arguments have merit and the ALJ's RFC determination for a reduced range of sedentary level work is supported by substantial evidence.  (DE 13 at 6-12.)

It must be borne in mind that Plaintiff bears the burden of proof at Steps 1-4, including proving her RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (["D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") *(citing Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 148 (6th Cir.1990); *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980)); *Cole v. Sec'y of Health and Human Servs.,* 820 F.2d 768, 771 (6th Cir.1987)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity").  The Commissioner has the burden of proof only at "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391-92.

Plaintiff's RFC is "the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e). However, '"ALJs must not succumb to the temptation to play doctor and make

14

their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F.

App'x 181, 194 (6th Cir. 2009) (citation omitted).  Pursuant to Social Security

Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a

'function-by-function evaluation' to determine a claimant's RFC, case law does

not require the ALJ to discuss those capacities for which no limitation is alleged."

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).  Instead, the

ALJ '"need only articulate how the evidence in the record supports the RFC

determination, discuss the claimant's ability to perform sustained work-related

activities, and explain the resolution of any inconsistencies in the record."'  *Id.*

(citations omitted).

Initially, I note that the *only* evidence Plaintiff offers in support of her

argument that she is entitled to additional limitations are *two pages* in the record—

one page from her hearing testimony and one page from Dr. Stone's "check-the-

box" report.  (DE 10 at 14, citing R. at 78, 428.)  However, she has otherwise

failed to support her argument that she has additional functional limitations with

*any* record evidence.

With regard to Plaintiff's hearing testimony, the ALJ found that Plaintiff's

"statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence

in the record for the reasons explained in this decision."  (R. at 58.)  Plaintiff has

not challenged that credibility finding and any such argument therefore is deemed

waived.  *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x. 464, 466 (6th Cir.

2003) ("issues which are 'adverted to in a perfunctory manner, unaccompanied by

some effort at developed argumentation, are deemed waived.' ") (quoting *United

States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

In any event, contrary to Plaintiff's unsupported assertion that the ALJ failed

to provide evidentiary support for his RFC determination, a review of his decision

reveals that ALJ Rabaut thoroughly reviewed and considered Plaintiff's function

report, her hearing testimony, her daily activities, a letter from her former

supervisor, the objective medical evidence, her treatment history, and the opinion

evidence (including the record cited by Plaintiff), and found that Plaintiff was

capable of performing a reduced range of sedentary exertional work.  (R. at 57-61,

citing, *e.g.,* R. at 108-17, 210-17, 283-84, 291-300, 353-86, 390-403, 405, 412-16,

427-32, 447-50, 452-55, 459-61.)  The ALJ explained that "[i]n assessing claimant's work related mental restrictions, [he] ha[s] considered the contemporaneous treatment records in evidence and the opinions of treating and non-treating specialists" and that "claimant's moderate limitations in concentration, persistence or pace limit her abilities to make work related decisions and tolerate changes in the work environment."  (R. at 56, 61.)  He noted that treating professionals have "consistently opined that claimant's GAF score has been in the 60-65 range," indicating mild symptoms or some difficulty in social, occupational or school functioning, and that Plaintiff has "consistently admitted to noncompliance with professional advice," which he found inconsistent with a claim of disabling impairments.  (*Id.* at 61.)  Plaintiff does not challenge these findings.

Further, non-examining consultant, Rose Moten, Ph.D., opined that Plaintiff had no more than mild limitations in concentration, persistence or pace, or with social functioning.  (R. at 56, 113.)  And, examining consultant David L. Hayter, Ph.D., examined Plaintiff on March 30, 2015 and opined that Plaintiff had only a "mild" condition, with good social functioning, communication, relationships with authority figures, behavior and coping skills.  (R. at 56, 393.)  Plaintiff does not challenge the acceptance or credibility of these two opinions.  This substantial evidence "supports the ALJ's decision" and the Court defers to it "even if there is

17

substantial evidence that would have supported an opposite conclusion." *Blakley*, 581 F.3d at 406 (internal citation omitted).

With respect to the one record citation provided by Plaintiff (R. at 428), as discussed further *supra*, the ALJ did not ignore that statement but rather expressly addressed that particular form assessment and noted that the opinion was "based on claimant's statements about her abilities, as well as review of claimant's records," and thus gave the opinions "great weight insofar as they are consistent with findings of mild problems interacting and relating with others and moderate difficulties with work related decision making and adapting to change," but otherwise implicitly rejecting those findings.  (R. at 60, citing R. at 427-32.) *See Scott*, 2018 WL 6175375, at *4 ("[I]t was both reasonable and proper for the ALJ to discount Dr. Miller's opinion as being based primarily upon Scott's subjective complaints.").  The ALJ was "not required to include in Plaintiff's RFC (or in the hypothetical question to the VE) those limitations that []he does not find credible." *Mullen v. Comm'r of Soc. Sec.*, No.13-14479, 2015 WL 1530778, at *11 (E.D. Mich. Mar. 31, 2015) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *see also Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012) (even if the record contains "conflicting evidence that would suggest further limitations, under the substantial evidence standard,

18

administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.") (citation omitted).

While Plaintiff believes that more restrictive limitations should have been incorporated in the ALJ's RFC assessment, as discussed above, the ALJ did not find that there was credible or compelling evidence that supported the incorporation of greater restrictions in the RFC or the hypothetical.  The Court has no obligation to, and will not, pour through this lengthy medical record in search of contrary evidence which the Plaintiff does not otherwise supply. *Davis v. Comm'r of Soc. Sec*., No. 2:15-cv-12644, 2016 WL 4445774, at *10 (E.D. Mich. July 29, 2016) (Patti, M.J.) ("Having already concluded that the treating physician's … opinions were properly discounted, the Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency with the 379-page record, particularly where Plaintiff has failed to use the adversarial process to point out any inconsistencies."), *report and recommendation adopted*, 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.).  The ALJ thoroughly examined and considered the entire record evidence in this case, including the treatment records, diagnostic reports and opinion evidence, and his RFC determination is supported by substantial evidence and within his "zone of choice."  *See Buxton v. Halter*, 246

F.3d 762, 772 (6th Cir. 2001).  The ALJ was not required to include additional

restrictions and Plaintiff's claim of error is denied.

### 3.    Plaintiff incorrectly states that the ALJ found that Plaintiff could perform light work

Plaintiff first argues in her third claim of error that "he [sic] cannot, in fact,

perform light [exertional] work *as found by the ALJ*." (DE 10 at 15 (emphasis

added).)  But the ALJ did not make that finding.  As the Commissioner correctly

explains, the ALJ instead found that Plaintiff could perform a reduced range of

*sedentary work*.  (DE 13 at 17, citing R. at 57.)[3]

Plaintiff also contends that the ALJ failed to thoroughly consider her

"numerous physical disabilities," including her "inability to sit longer than 15-20

minutes at a given time before the onset of body stiffness," that "[s]tanding longer

than ten minutes fuels [her] chronic body pains and fibromyalgia symptomology,"

and that she suffer from osteoarthritis, fibromyalgia, and bilateral carpal tunnel

syndrome that "significantly affects her exertional capacity, making her unable to

push, pull and lift." (DE 10 at 16.)  However, the ALJ expressly acknowledged

that Plaintiff had severe impairments including fibromyalgia, CTS, diabetes and

---

[3] The Court is disturbed by this gross inaccuracy, which comes on top of Plaintiff's questionable characterization of Dr. Stone as a treating physician, as discussed earlier.  Plaintiff criticizes the ALJ for his purported "failure to seriously analyze Ms. Plaintiff's [sic] physical limitations…." (DE 10 at 16.)  But the Court is concerned with Plaintiff's *own* failure to seriously analyze the ALJ's opinion and the actual record of this case.

obesity and his RFC determination accommodates those limitations by restricting Plaintiff to a reduced range of sedentary exertional level work including "the option to alternate between sitting and standing about every 15 to 30 minutes." (R. at 57.) The ALJ found that "nothing in the objective imaging, clinical or laboratory data establishes that claimant suffers from any physical injury or pathology that could be expected to prevent her from performing sedentary work, with a sit/stand option and additional manipulative and postural limitations and protection from vibration and heights." (R. at 61.) While Plaintiff includes a citation to a disability form dated April 28, 2016 and signed by Vanessa Robinson, M.D., that form does not provide any objective evidence supporting the extreme limitations proposed (*no* sitting, only *one hour* of standing total per day, and *no* ability to bend, lift, push, pull or carry). (DE 10 at 16, citing R. at 431.)[4] In fact, that form states that the extreme limitations began October 23, 2014, and the ALJ noted that Dr. Robinson found on that date that Plaintiff "demonstrated normal range of motion with no edema or tenderness." (R. at 59, citing R. at 384-86.) Further, April 2015 x-rays of Plaintiff's cervical spine were unremarkable, and consulting examiner Dr. Bina Shaw opined in March 2015 that Plaintiff's gait was

---

[4] Plaintiff fails to argue that the ALJ erred by not expressly addressing this disability form as opinion evidence, and thus has waived that claim. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.").

steady with no limp or assistive device, range of motion was generally full, handgrip and muscle power were 5/5, and that Plaintiff could bend partially and lift at least 20 pounds without difficulty.   (R. at 384-86, 394-400.)  Plaintiff has failed to identify any objective medical evidence supporting the extreme limitations he proposed. And, as explained above, the Court has no obligation to pour through the lengthy medical record in search of contrary evidence which the Plaintiff does not otherwise supply.  *See Davis*, 2016 WL 4445774, at *10.  Plaintiff has failed to show that or how the ALJ's RFC is not supported by substantial evidence and has failed to convincingly show that a different outcome was legally or factually required on this record.

Accordingly, Plaintiff's claim of error should be denied.

### F.      Conclusion

The ALJ's decision was supported by substantial evidence, and no legal error which would lead to a different result has been shown.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 13), and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 1, 2019                    s/*Anthony P. Patti*
                                           Anthony P. Patti
                                           UNITED STATES MAGISTRATE JUDGE

23

## **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 1, 2019, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti
